IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROGER HOPKINS and  *
ADAM HOPKKINS,     *
                   *
    Plaintiffs,    *
                   *
        v.         *     CV 114-165
                   *
EASTMAN OUTDOORS, INC., *
d/b/a CARBON EXPRESS,   *
                   *
    Defendant.     *

**O R D E R**

Presently pending before the Court is Plaintiffs' Motion to Remand. (Doc. 5.) For the reasons set forth below, this motion is **GRANTED**.

**I. BACKGROUND**

On June 30, 2014, Roger and Adam Hopkins ("Plaintiffs" or "the Hopkins") filed suit against Defendant Eastman Outdoors, Inc. ("Eastman") in Superior Court of Jefferson County, Georgia, alleging various theories of products liability. (Doc. 1 ("Compl."), Ex. 1.) Plaintiffs aver that Roger Hopkins was injured by an arrow manufactured by Eastman when the arrow "exploded or shattered and pierced [his] hand." (Id. ¶ 6.) Plaintiffs' complaint alleges that Roger Hopkins suffered medical damages amounting to $12,266.68.[1] (Id. ¶ 27(b-c).)

---

[1] The damages include medical expenses incurred by Roger Hopkins' father, Adam Hopkins, prior to Roger's eighteenth birthday, as well as expenses incurred by Roger after he turned eighteen. (Compl. ¶¶ 25-27.)

Plaintiffs additionally request general damages for Roger Hopkins' pain and suffering and "[s]uch other and further relief as this Court may deem just and proper." (Id. ¶ 27(d, f).)

On August 6, 2014, Eastman removed the case to this Court on the basis of diversity jurisdiction. (Doc. 1.) Thereafter, on August 14, 2014, Plaintiffs filed their motion to remand, alleging that Eastman failed to prove the amount in controversy by a preponderance of the evidence. In opposition, Eastman argues that it met its burden based on (1) Plaintiffs' pre-suit demand letter and refusal to stipulate to damages below $75,000.00; (2) the nature of the injury; and (3) comparison cases.

## II. LEGAL STANDARD

A defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter. 28 U.S.C. § 1441(a). The district court may exercise original jurisdiction where the amount in controversy exceeds $75,000.00 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). In the present case, the parties do not dispute that they are citizens of different states; the only question is whether the amount in controversy has been satisfied.

"On a motion to remand, the removing party bears the burden of establishing jurisdiction." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). "[R]emoval from state court is [jurisdictionally] proper if it is facially apparent from the

2

complaint that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Id.; see also Lowery v. Ala. Power Co., 483 F.3d 1184, 1187 (11th Cir. 2007). In assessing whether the defendant has met its burden, "the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." Pretka, 608 F.3d at 754. This evidence may be "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." Id. "[N]either the defendants nor the court may speculate," however, and "the existence of jurisdiction should not be divined by looking to the stars." Lowery, 483 F.3d at 1215. Consequently, all doubts about the propriety of removal should be resolved in favor of remand. King v. Gov't Emps. Ins. Co., No. 13-14794, 2014 WL 4357480, at *3 (11th Cir. Sept. 4, 2014) (citing Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006)).

### III. DISCUSSION

Eastman attempts to prove that the amount in controversy is met based upon: (1) the Hopkins' refusal to stipulate that the amount in controversy does not exceed $75,000.00 and their

3

initial demand letter of $72,000.00; (2) the nature of the injury; and (3) comparison cases.

As a preliminary matter, a plaintiff's refusal to stipulate that the total value of his damages is less than $75,000.00, by itself, is inadequate to prove the amount in controversy. Cross v. Wal-Mart Stores, East, LP, No. 7:11-cv-021, 2011 WL 976414, at *1 (M.D. Ga. Mar. 17, 2011). As the Eleventh Circuit stated in Williams v. Best Buy Co., "[t]here are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy [the defendant's] burden of proof on the jurisdictional issue." 269 F.3d 1316, 1320 (11th Cir. 2001).

Eastman also presents a pre-suit demand letter from the Hopkins requesting $72,000.00 in damages. (Doc. 10, Ex. 2.) The special damages described in the letter total $12,266.68 for medical expenses. (Id.) The remainder of the damages requested in the pre-suit demand is left unspecified. (Id.) As the Court understands Eastman's argument, because the demand letter does not explain the calculation of damages and properly detail whether continued medical treatment will be necessary, the damages received could easily exceed $72,000. (Doc. 10 at 2-3.)

A settlement offer, by itself, does not determine whether the amount in controversy requirement has been satisfied, but "it counts for something." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994). More weight should be given to a settlement demand if it is an "honest assessment of damages."

4

Jackson v. Am. Gen. Fin. Servs., Inc., No. 7:06-cv-19(HL), 2006 WL 839092, at *2 n.2 (M.D. Ga. Mar. 27, 2006) (quoting Golden v. Dodge-Markham Co., Inc., 1 F. Supp. 2d 1360, 1365 (M.D. Fla. 1998)). As Eastman correctly points out, there is "no indication how the $72,000.00 demand was calculated other than indicating that there were $12,266.68 in medical damages." (Doc. 10 at 2.) However, the Court will not — without more — presume that the damages would exceed that in the demand letter simply because the demand did not specify the bases for damages or detail any future medical treatment.

More importantly, Eastman asks this Court to engage in "impermissible speculation" as to the amount that could be awarded as general damages. See Arrington v. Wal-Mart Stores, Inc., No. 7:13-cv-154(HL), 2014 WL 657398, at *2 (M.D. Ga. Feb. 20, 2014). In Arrington, the defendant attempted to satisfy its burden by showing that the plaintiff refused to sign a stipulation of damages, incurred approximately $44,000 in medical expenses, and claimed severe and permanent injuries. Id. Additionally, the defendant in Arrington pointed to a jury award of $225,000 reached in a different case that occurred more than a decade earlier. Id. In that earlier case, the individual suffered injuries resulting from a car collision, while the Arrington plaintiff alleged injuries from a slip and fall. Id. The court held that it would not "make an apples to oranges comparison" because the "factual situations presented [were] completely different, and there [was] not sufficient

5

information in Plaintiff's pleadings for the Court to compare the injuries." Id.

As in Arrington, Eastman's attempt to compare the present case to others with high jury awards falls short. Eastman points to three prior cases to support its conclusion that damages exceed $75,000. Put simply, Eastman's attempts to analogize Roger Hopkins' injury to that of other injured plaintiffs "who received damages greater than $75,000 is nothing more than gross speculation, guesswork and wishful thinking, none of which the Court can indulge." Lambeth v. Peterbilt Motors Co., No. 12-0169-WS-N, 2012 WL 1712692, at *5 (S.D. Ala. May 15, 2012).

First, Eastman points to a case where the plaintiff's hand broke through glass window panels of a door and resulted in "severe lacerations to his right hand and wrist, including lacerations to the ulnar nerve and five tendons," multiple surgeries, occupational therapy, as well as 95 to 98 percent loss of strength, coordination, and sensation in that hand. (Doc. 1, Ex. B.) In that case, the jury awarded $183,155 for medical expenses and $700,000 for past, present, and future pain and suffering. (Id.) However, "[t]here is no reasonable, principled basis for drawing an apples-to-apples comparison between" Roger Hopkins and the plaintiff described herein, as that plaintiff lost 95 to 98 percent of the strength, coordination, and sensation in his dominant hand. Lambeth, 2012 WL 1712692, at *5. Here, Plaintiff alleges that he "has some

6

weakness in his left hand and some numbness in the area between the thumb and pointer finger." (Doc. 5, Ex. 1.) These allegations are hardly sufficient to draw a reasoned comparison to a plaintiff who lost nearly 100 percent usage of his dominant hand.

Next, Eastman cites a Florida settlement arising out of a boat crash where the plaintiff's hand was crushed between the gunwales of the boats, the pressure of which caused the bone of her finger to break through her skin. (Id., Ex. C.) The Florida plaintiff claimed that the accident impacted her ability to get a job, as she was a physical therapist. (Id.) The medical costs were approximately $6,000, and the settlement was $92,500. (Id.) Again, this settlement is distinguishable on its facts. Unlike that plaintiff, Roger Hopkins makes no claim for lost wages and the Court will not speculate as to what portion of the settlement was attributable to the Florida plaintiff's inability to work.

Finally, Eastman points to a jury verdict against a different arrow manufacturer. (Doc. 10, Ex. C.) Eastman claims that the injury in that case also involved an arrow shattering upon release and entering an individual's hand. (Id.) There, the plaintiff was awarded close to $40,000 in medical expenses, $246,283.58 in economic damages, and $750,000 in non-economic damages. (Id.) Critically, Eastman does not detail the specifics of the injury itself, aside from asserting a similar cause. Eastman does not provide the Court with information

7

about the plaintiff, such as his age, working status, or the impact of the injury. Without more, the Court is again unable to draw a reasoned comparison between Roger Hopkins and the comparator plaintiff.

## IV. CONCLUSION

The only evidence Eastman puts forth to show the amount in controversy has been met is $12,266.68 in medical expenses; a pre-suit demand letter that lacks sufficient detail to be an honest assessment of damages; Plaintiff's refusal to stipulate to damages; and cases where plaintiffs with hand injuries received more than the minimum amount in controversy. For the reasons described above, this evidence is insufficient to establish by a preponderance of the evidence that the amount in controversy is met in this case.

Accordingly, Plaintiffs' motion to remand (Doc. 5) is **GRANTED**. The Clerk is **DIRECTED** to **REMAND** this case to the State Court of Jefferson County, Georgia. The Clerk is further directed to **TERMINATE** all motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 10th day of October, 2014.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA